[No. 3956.  Decided December 24, 1901.]

MELISSA BARR et al., Appellants, v. MERRITT WOOD et al., Respondents.

CONVEYANCES—RESCISSION—WANT OF CONSIDERATION.

A conveyance by the heirs of the wife's interest in a community estate to the surviving husband may be set aside, when it appears that the grantors were simple-minded, illiterate people, who had intended to give the grantee merely a life estate in their portion of the property, in consideration of his drawing up papers so as to cause their interests to revert to them at his death; that at the time of the execution of such conveyance to him there was some talk of his providing for the grantors by a testamentary devise, but that they did not understand that he meant thereby the execution of a will in their favor, but an instrument whereby their rights could be protected and enforced; and that notice of the rescission of the conveyance was given him by some of the grantors before the execution of the contract on his part.

Appeal from Superior Court, Chehalis County.—Hon. CHARLES W. HODGON, Judge.  Reversed.

George C. Israel, for appellants.

J. A. Hutcheson and B. G. Cheney, for respondents.

The opinion of the court was delivered by

DUNBAR, J.—In 1899 Mary J. Wood and her husband, Merritt Wood, lived in Chehalis county, Washington.

upon a farm, which they had acquired during their married life, said farm being worth about $15,000; and they had also accumulated $10,000 in personal property,—all of which is conceded to be community property.   Each had been married previous to their marriage with each other, and as the result of such former marriage each had a family at the time of their union.   The children of the said Mary J. Wood by her former marriage were Melissa Barr, Thomas J. Hall, and Hiram D. Hall, and she also had a granddaughter, Margaret S. Calderwood, the only child of a deceased child of Mary J. Wood, the issue of said former marriage; all of whom are plaintiffs in this action. There were born to Mary J. Wood and defendant, Merritt Wood, during their union, the defendants Della A. Maris, George W. Wood, William G. Wood, John P. Wood, Maud Wagner, and Warren M. Wood.   On the 21st day of September, 1899, the said Mary J. Wood died in Chehalis county, Washington, intestate, leaving as heirs to her community interest in said property all of the plaintiffs and all of defendants except said Merritt Wood.   These heirs all shared equally under the law.   For the purpose of preventing an administration of the estate of his deceased wife, and for the purpose, as he said, of being able to control the property until he died, the defendant Merritt Wood, two or three days after the death of his wife, induced all of the said heirs to execute to him a deed to all of their interests in the real estate belonging to their deceased mother, and a bill of sale to all of their interests in such personal property.   The claim of the plaintiffs is to the effect that their signatures and the execution of the instruments were obtained by the said Merritt Wood without the payment of any consideration, and that such signing and execution were accomplished by fraud and false representations· on

the part of said Merritt Wood; that they were induced to
sign through representations by said Wood that, if they
would so deed and sell said interest, he would, at the same
time, in consideration of such action on their part, execute
and place upon record in the office of the county auditor
of said Chehalis county a deed to all of the heirs, con-
veying to them jointly, and share and share alike, all of
the real estate owned by himself and deceased,
and would, therein reserve to himself a life es-
tate in said property; that he would, moreover,
execute a conveyance of all of the personal prop-
erty in the same manner, reserving unto himself the right
to use the same during his life, and enjoy the increase
thereof as his property. It is contended that these prom-
ises were the sole consideration moving the plaintiff heirs
to make such conveyances to their stepfather; that, by
reason of the relationship existing between them and the
defendant, Merritt Wood, they imposed the utmost confid-
ence in him, and relied implicitly upon his statement of
the kind of papers he would execute for their protection;
that he wholly failed to carry into effect these promises,
but that some ten days after the deed and bill of sale had
been executed by them, one of these plaintiffs (Melissa
Barr), learning that defendant Merritt Wood did not intend
to carry into effect his promises and agreement, announced
to him that the contract was rescinded so far as she was
concerned; that after this time said Merritt Wood executed
the will in which he bequeathed all of said estate to the
children of his second marriage, the defendants herein,
and the children of Mrs. Wood by her former marriage,
the plaintiffs herein, share and share alike. The complaint
prayed that said deed and the transfer of the personal
property be declared null and void. There is some discus-

sion in respondent's brief of the question whether or not
the relief prayed for can be granted under the allegations
of the complaint, but, this being an equitable action, the
court will consider the complaint amended to meet the re-
quirements of the testimony given in the case.    At the
conclusion of the trial the court decided that as a matter
of law the plaintiffs' action should be dismissed for want
of equity, and awarded costs to the defendants.

Many authorities are cited in support of the respective
contentions of the parties to the action, but, as we view
the case, it is entirely a controversy over the facts proven.
If the record established as facts, that these plaintiffs,
deliberately, of their own free will, and with an under-
standing of the legal effect of their agreement, entered into
a contract with defendant Wood by which they should
deed him, and did deed him, the real property of the estate,
and give him a bill of sale of the personal property for the
consideration of the will in their favor, which he could
change at his own will, knowing at the same time that he
could sell the property and pass title to it at any time to an
innocent purchaser; knowing, in short, that they would
have to rely entirely upon the honor of Wood for their pro-
tection; in fact, if they entered into the agreement under
the circumstances as contended for by the defendants,—
then the decree of the lower court is right, and the parties
should be bound by their agreement, even though they had
actually given Wood their property, and delivered its pos-
session to him.    But we are not able to gather this state
of facts from the record, which we have examined with
particular care.    It appears from the record that two or
three days after the death of his wife Wood ascertained
that he was not the owner of his wife's share of the com-
munity property, he having before presumed that he was.

Upon obtaining this information, with great apparent distress, he besought these plaintiffs, before they had returned home from their mother's obsequies, to make over their share of the property to him for the remainder of his life, and pleaded with them with tears and lamentations not to break him up by a division of the farm. It was urged by Mrs. Barr, one of the plaintiffs, that she was feeling too badly to enter into any business negotiations; that she desired to go home and see her husband and to attend to the business afterwards. Miss Calderwood and one of the brothers also insisted that they did not wish to be bothered with the business at that time. Mr. Wood was, however, exceedingly importunate, and insisted that they should go to Montesano at once, and have the business attended to. The plaintiffs finally yielded to his tearful entreaties, and went to Montesano to the office of a lawyer, who had been employed by Mr. Wood to draw up the proper papers. The record shows conclusively that these plaintiffs were a simple-minded, illiterate, kindhearted people, and that it was purely out of sympathy with Mr. Wood, and a desire to relieve his apprehensions about a division of the farm, that they went to Montesano at that time. While there, they all signed the deed and the bill of sale which are the subjects of this controversy. As to their conversation while in the scrivener's office, the testimony is conflicting. The scrivener testifies that he explained to the plaintiffs the legal significance of the papers which they signed, and of the will which it is claimed by the plaintiffs it was agreed that Wood should execute in their behalf; and the defendants testified to substantially the same state of facts. The plaintiffs, however, testified that there was no talk about a will, but that all the talk and all the agreement was that they should only give Mr. Wood a life interest in their share

of the property, and that he should execute a paper returning it to them or their heirs at the time of his death.    The scrivener testified that he might have used the term "testamentary devise" when referring to the will, and, if he did, it will be easily gathered from the record that these plaintiffs would not have understood that the instrument referred to was a will.    He also admits that he probably informed them that they could enforce a protection of their interests at the hands of Mr. Wood by virtue of the papers signed.    And, without especially reviewing or analyzing the voluminous testimony in this case, we are convinced beyond question that all that the plaintiffs intended to do, and all that they agreed to do, and all that they thought they were doing, was to give their stepfather a life interest in the estate, and that they did not intend to alienate property which was indisputably theirs beyond the power of recovery.    Their constant talk was, "All right, grandpa, we are willing to let you have the use of it as long as you live, just so you make papers out so that we or our children can get it when you are through with it."    It will be observed that defendant Wood was not so solicitous about having the business hurriedly closed up after the deed and bill of sale had been executed in his favor, for it was some ten days after that before he executed the will which it is claimed is the consideration for the deed and bill of sale; and this was not executed until after the plaintiff Melissa Barr had discovered that the transaction was entirely one-sided, had revoked and recalled her deed and transfer, and refused to accept a will as a consideration of the transfer and the deed. The will that was executed ten days after the execution of the deed and bill of sale, outside of the fact that it could be revoked at any time, and another will made devising the whole estate to some one else, and outside of

the fact above noted that the property under the will could at any time be sold to an innocent purchaser, makes special provision for advancement out of the estate during the testator's life time to such of the devisees as the testator saw fit to prefer. Under the conditions of this will and the law governing wills, the consideration for the deed and bill of sale entirely fails, and for the reason that the instrument executed did not represent the true intent and agreement of the parties, that the deed and bill of sale were revoked and rescinded before the execution of the contract, and that the deed and bill of sale were without consideration, and are therefore void, the judgment will be reversed, with instructions to the lower court to enter a decree declaring said deed and bill of sale null and void, and of no force or effect whatever.

REAVIS, C. J., and ANDERS, MOUNT, WHITE, FULLERTON and HADLEY, JJ., concur.